# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF IOWA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | CASE NO. 3:19-cr-00044 |
| | ) | |
| v. | ) | **REPORT AND RECOMMENDATION** |
| | ) | **ON DEFENDANT'S MOTION TO** |
| JUNIOR EMILIO ROLDAN-MARIN, | ) | **SUPPRESS** |
| | ) | |
| Defendant. | ) | |

This matter comes before the Court pursuant to the Motion to Suppress Evidence (Dkt. No. 35) and supporting Brief (Dkt. No. 35-1) filed by Junior Emilio Roldan Marin ("Defendant") on August 6, 2019. The Government resisted the motion on August 19, 2019. Dkt. No. 48. This matter was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) for report and recommendation by Chief Judge John A. Jarvey. Dkt. No. 51. Trial is set for November 4, 2019. Dkt. No. 47.

An evidentiary hearing was held on September 5, 2019. The Government appeared by Assistant U.S. Attorneys Andrea Glasgow and Cliff Cronk. Defendant appeared personally and with his attorney, Assistant Federal Defender Terry L. McAtee. The Court received Government's Exhibit 1 – Trial Court's Information for Defendant's domestic abuse assault conviction; Government's Exhibit 2 – Waiver and Plea Agreement for Defendant's domestic abuse assault conviction; Government's Exhibit 3 – Order of Judgment for Defendant's domestic abuse assault conviction; Government's Exhibit 4 – Clerk's Certificate for Defendant's domestic abuse assault conviction; Government's Exhibit 5 – Officer Jacob Belay's body camera video; Government's Exhibit 6 – Officer Ryan Schnackel's body camera video and Government's Exhibit 7 – search warrant and supporting documentation. Testimony was received from Officers Jacob Belay, Ryan Schnackel and

Jared Harding, all of the Iowa City Police Department, and Kerry Walsh, Federal Public Defender's Office Investigator.

Due to the unavailability of a witness, a further evidentiary hearing was held on September 9, 2019. At that hearing, the Government appeared by Assistant U.S. Attorney Andrea Glasgow. Defendant appeared personally and with his attorney, Assistant Federal Defender Terry L. McAtee. Officer Travis Neeld of the Iowa City Police Department testified. The Court received Defendant's Exhibit A – a redacted version of the search warrant and Defendant's Exhibit B – a portion of Officer Neeld's body camera video from the date in question. The matter is now fully submitted.

This Magistrate Judge has carefully considered the record evidence, including viewing the entirety of each of the videos admitted into evidence, the arguments and statements of counsel and submits the following report. As set forth below, based on the facts presented and applicable law, it is recommended that the motion be denied.

## I. FINDINGS OF FACT

Defendant was indicted on May 8, 2019, on one count of being a prohibited person in possession of firearms, in violation of 18 U.S.C. §§ 922(g)(3), 922(g)(8), 922(g)(9) and 924(a)(2). Dkt. No. 1. A superseding indictment was filed on August 7, 2019 for the same one count. Dkt. No. 40. This charge arose from a 911 call to police on December 9, 2018 by an individual reporting that a short Hispanic male, who resided at 2637 Indigo Court in Iowa City, Iowa, had gotten into an argument with the caller after the caller's friend had pulled in the driveway at 2637 Indigo Court. The caller reported that the male had retrieved a long gun, walked down to the caller's residence and threatened the caller and the caller's friend by pointing the long gun at them. The male then left the area in a red Dodge van.

The 911 dispatcher was able to locate a red Dodge Caravan registered to Cheryl Bautista at 2637 Indigo Court. Officer Belay heard the call and recognized Ms. Bautista's name as the female resident at 2637 Indigo Court. Officer Belay had previously responded to that address for domestic disputes between a white female and a Hispanic male. He further recalled having previously given Defendant a ride from this address to his mother's house at 2100 South Scott Boulevard. Based on his recollection, Officer Belay travelled to the South Scott Boulevard address.

When Officer Belay arrived at 2100 South Scott Boulevard address, he located a red Dodge Caravan parked in front of trailer #73. Officer Belay advised dispatch that he had located the vehicle, and other officers were dispatched to this location. After the other officers arrived, Officer Belay spoke with them about the situation. During this conversation, the Defendant came out of trailer #73 and began walking toward them. At that time, given the report of Defendant possessing a firearm and using it to threaten another, Officer Belay drew his weapon and ordered Defendant to his knees. Defendant complied, and another officer handcuffed Defendant.

Officer Belay asked Defendant what was happening. Defendant denied knowing why the police were there and said he had been moving a bed. Officer Belay then advised Defendant of his *Miranda* Rights. Defendant was advised he was not under arrest, but that he was being detained. Defendant continued to deny he knew why the police were there. Officer Belay and Defendant discussed a prior encounter, and about other people the officer could talk to such as Defendant's girlfriend and family.

Officer Schnackel placed Defendant in his squad car due to the low temperature, while Officer Belay and other officers spoke with those inside trailer #73. Defendant's nephew stated that he had been with Defendant at the Indigo Court residence and admitted there had been a confrontation with some of the neighbors but denied seeing Defendant with a firearm.

In the squad car, Defendant spoke with the officers regarding marijuana found on him, whether he will be arrested and why the police were there. During this period, the squad car radio was transmitting information and radio traffic was broadcast regarding a shotgun. Defendant stated he has a shotgun at the residence on Indigo Court because he went hunting that day. He indicated the shotgun was a 12-guage, it looked like an automatic rifle and he recently purchased a scope for it. Defendant told the officers he used the shotgun for hunting and at a gun range and it had been at the residence at Indigo Court since he purchased it.

Based on consent, the officers searched both the red Dodge van and trailer #73. The search did not locate any firearms but did locate spent shotgun shells inside the trailer. That same evening, Officer Harding obtained a search warrant for the residence at 2637 Indigo Court. During that search, officers located a 12-gauge shotgun and a shotgun shell.

### A.    Testimony of Officer Belay

At the hearing on September 5, 2019, Officer Belay testified he has been a police officer with the Iowa City Police Department for four and a half years. He is a field training officer, special response team member and a certified drug recognition expert. Officer Belay testified that, on December 9, 2018, he responded to a call for a weapon brandished at a neighbor at 2637 Indigo Court. Officer Belay was given a description of a Hispanic male who left the scene in a red van, information regarding the registered owner of the van and the license plate of the van. Officer Belay knew the registered owner from previous calls to the residence, and, at the previous calls, Defendant was present. At some of these calls, Officer Belay had taken Defendant to a second address on South Scott Boulevard, that is within Johnson County, but not Iowa City.

Because of the experience from these prior encounters, Officer Belay went to the South Scott Boulevard address believing he likely could find Defendant there. Upon arrival at the South Scott

Boulevard address, Officer Belay found the red van. No one was in the red van, and Officer Belay radioed for more officers. Officer Belay testified that, at that point, he did not know where Defendant was or where any gun might be. Once the other officers arrived, Officer Belay met with them next to a squad car parked behind the red van to discuss how to proceed. During this meeting, Defendant came out of trailer #73 and Officer Belay immediately recognized him. Officer Belay immediately pointed his gun at Defendant, issued verbal commands to Defendant to show his hands because he did not know if Defendant was armed and ordered Defendant to his knees. Defendant complied with these commands and was handcuffed by another officer. Officer Belay agreed that, at this time, Defendant was not free to leave.

Due to the reports about the rifle and because he did not see any weapon, Office Belay questioned Defendant prior to issuing a *Miranda* warning to find out about the firearm. After this initial questioning, Officer Belay issued a *Miranda* warning to Defendant. The Defendant said he understood the *Miranda* warning, he understood his *Miranda* rights, and that he had read and heard *Miranda* rights previously. Officer Belay testified that he has always spoken to Defendant in English, he has never had any communication issues with him, and he was the only officer who spoke to Defendant initially.

Officer Belay did not remember how long Defendant was on his knees, but it was less than one minute. He agreed Defendant stated he did not know why the police were there. At no time did Defendant say he wanted to stop talking or wanted an attorney. Further, Officer Belay asserted that no physical violence or threats were made to Defendant by himself or anyone he saw. At this point, Office Belay went inside the trailer to talk to people to further the investigation, while Defendant was placed in Officer Schnackel's squad car.

**B.      Testimony of Officer Schnackel**

Officer Schnackel testified he has been a patrol officer with the Iowa City Police Department for eleven and a half years. Prior to this employment, he was with the University of Iowa Police Department for four years. Officer Schnackel is a field training officer and works the evening shift.

On December 9, 2018, he was substituting for another field training officer and had an officer trainee with him while on duty. Responding to the call in this case, Officer Schnackel and the officer trainee were on route to the Indigo Court address but diverted after hearing that Officer Belay was at the South Scott Boulevard address. Upon arriving there, Officer Schnackel pulled behind Officer Belay's squad car.

At the scene, he was speaking to Officer Belay and Officer Harding when he saw Defendant come out of the trailer. Officer Schnackel saw Defendant head towards the opposite side of the red van. He was aware the call involved a weapon but did not see or know where the weapon was. Due to the risk involved with those circumstances and for officer safety, Officer Schnackel testified he pulled out his firearm. Defendant was eventually taken into custody, placed in Officer Schnackel's squad car and the officers put away their firearms.

Officer Schnackel was present when Defendant was read his *Miranda* rights. Officer Schnackel testified that when he spoke to Defendant while he was in the squad car, Defendant spoke in English, he had no problems communicating with Defendant, Defendant did not say he wanted to stop talking and Defendant did not say he wanted an attorney. No physical threats were made by anyone towards Defendant. Defendant was in handcuffs and not allowed to leave the squad car.

Officer Schnackel testified his squad car was behind Officer Belay's squad car in a driveway, not on the street. However, his squad car was in public view in a common area near the trailer

belonging to Defendant's mother. Eventually, Officer Schnackel transported Defendant to the Johnson County Jail.

### C.    Testimony of Officer Harding

Officer Harding testified he has been a police officer with the Iowa City Police Department for five and a half years. Officer Harding confirmed he was on the scene at the South Scott Boulevard address on December 9, 2018. He was present with other officers when he saw Defendant come out of the trailer and was ordered to his knees. Although he did not do so initially, Officer Harding did question the Defendant after he was placed in Officer Schnackel's squad car.

The search warrant sought for 2367 Indigo Court was authored by Officer Harding, upon returning from the scene at South Scott Boulevard to the Iowa City Police Department. Officer Harding testified he had contact with Officer Neeld while Officer Neeld was at the Indigo Court address, who gave him details for the search warrant. Officer Harding testified Officer Neeld spoke with the complainant, and he did not know if Officer Neeld spoke to other witnesses. However, only the information from the complainant was used in the search warrant. Officer Harding took the search warrant to a judge for approval and then to the Indigo Court residence address for execution.

### D.    Testimony of Investigator Walsh

Defendant called Kerry Walsh to testify. Walsh is an investigator for the Federal Public Defender's office and has been so employed since March 2018. Kerry testified he reviewed the discovery in this case including Officer Neeld's body camera video, which contained both audio and video content.  Because it appeared Defendant was calling Walsh for the sole purpose of discussing Officer Neeld's actions from the date in question, the Court had a bench conference with counsel. Defendant indicated he was proceeding with Walsh's testimony due to Officer Neeld not being present at the hearing. Although the government objected to the relevance of Office Neeld's

testimony, by agreement of the parties, Walsh was withdrawn as a witness and the hearing was continued for the purpose of having Officer Neeld present to testify.

### E.      Testimony of Officer Neeld

At the continued hearing on September 9, 2019, Defendant called Officer Neeld to testify. Officer Neeld has been a police officer with the Iowa City Police Department for over ten years. Officer Neeld testified he was part of the investigation at the Indigo Court residence on December 9, 2018, he was wearing a body camera that day and had reviewed the video.

A male witness was interviewed by Officer Neeld in connection with his investigation. Because this witness did not want to cooperate with him, Officer Neeld told this witness that without a statement from him, Officer Neeld would not be able to get a search warrant. However, Officer Neeld testified that, despite this statement, he believed there was probable cause to pursue charges. When he spoke to this witness, the witness was reluctant to speak, expressing concerns for his safety considering what had just occurred with Defendant. Officer Neeld encouraged the witness to cooperate to strengthen the case.

At this point, as Officer Neeld was looking at possible charges, he knew Defendant was a felon, but was not aware of any domestic assault conviction. Officer Neeld indicated he spoke to the witness in a manner to discover the best information for the investigation, not to find probable cause. After speaking to the witness, Officer Neeld spoke to Office Harding and learned of Defendant's domestic assault conviction. However, even before learning that information, Officer Neeld testified he believed he had probable cause and was convinced Defendant was the person to be charged. Officer Neeld was involved in executing the search warrant at Indigo Court and believed there was probable cause to search the residence.

## II.  ANALYSIS

Defendant is seeking to suppress his statements to law enforcement, items found during the search of the residence at Indigo Court, testimony of law enforcement officers concerning their observations of the items found during such search and any reports of forensic examinations performed on any such items. Dkt. No. 35, p. 2. In support of this request, Defendant contends that he was in custody and interrogated prior to receiving a *Miranda* warning; any statements made after such *Miranda* warning were involuntary under the totality of the circumstances; the search warrant in this case is not supported by probable cause nor does it establish a nexus between the place to be searched and evidence sought; and, finally, the good faith exception to the exclusionary rule does not apply in this case. Dkt. No. 35-1, pp. 2-8.

The Government resists the motion in each particular. Dkt. No. 48. The Court addresses each of Defendant's arguments in turn.

### A.       Defendant's Pre-Miranda Statements

*Miranda v. Arizona,* 384 U.S. 436, 479 (1966), provides that a suspect in custody must be advised as follows:

> [h]e must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires.

*Id.* The right to counsel in such a situation is necessary, the court concluded, because custodial police interrogation of an accused, "contains inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely." *Id.* at 467. Therefore, statements made during custodial interrogation are inadmissible unless the suspect is specifically warned of his *Miranda* rights and freely decides to forego those

rights. *Duckworth v. Eagan*, 492 U.S. 195, 202 (1989) (quoting *New York v. Quarles*, 467 U.S. 649, 654 (1984)). Interrogation under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect. *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980).

A suspect is considered to be in custody for *Miranda* purposes when a reasonable person in the suspect's position would have considered his freedom of movement restrained to a degree that is usually associated with a formal arrest. *United States v. Caldwell*, 954 F.2d 496, 499 (8th Cir. 1992) (citing *Berkemer v. McCarty*, 468 U.S. 420, 440 (1984)); *United States v. Goudreau,* 854 F.2d 1097, 1098 (8th Cir.1988). In analyzing whether an individual is in custody, the Eighth Circuit has applied the following non-exclusive factors:

> (1) whether the suspect was informed that he was free to leave and that answering was voluntary; (2) whether the suspect possessed freedom of movement; (3) whether the suspect imitated contact or voluntarily acquiesced; (4) whether strong arm tactics or strategies were employed; (5) whether the atmosphere was police dominated; or, (6) whether the suspect was placed under arrest at the end of questioning.

*United States v. Muhlenbruch*, 634 F.3d 987, 996 (8th Cir. 2011) (citing *United States v. Flores–Sandoval,* 474 F.3d 1142, 1146-47 (8th Cir.2007)).

However, there is an exception to the *Miranda* rule when it comes to questions regarding public safety. *See New York v. Quarles*, 467 U.S. 649, 655 (1984). In *Quarles*, the court held that whatever the motivation of the individual officers in such a situation, we do not believe that the doctrinal underpinnings of *Miranda* require that it be applied in all its rigor to a situation in which police officers ask questions reasonably prompted by a concern for the public safety. *Id*. at 656.

Defendant argues that, when he was ordered to the ground at gunpoint and handcuffed, the atmosphere was police dominated, he reasonably felt he was being detained and his movement was

restricted by law enforcement. Dkt. No. 35-1, p. 3. As such, he was in custody for *Miranda* purposes. *Id.* p. 4. Further, his statements to law enforcement were the product of interrogation. *Id.* Because he made potentially incriminating statements to officers prior to any *Miranda* warning, those statements must be suppressed. *Id.*

In response, the Government concedes Defendant was in custody and that Defendant's statements regarding his whereabouts that night are potentially incriminating, but denies that Defendant's *Miranda* rights were violated. Dkt. No. 48, pp. 7-8. The Government contends the public safety exception applies here, as the initial questioning by the officers was related to public safety concerns about where Defendant was, what he was doing, and the location of the firearm. *Id.* p. 9. For that reason, the Government argues that this brief exchange prior to any *Miranda* warning being issued should not be suppressed. *Id.*

Regarding Defendant's first statement to police, the Magistrate Judge finds that the public safety exception to the requirement to *Miranda* applies. In this case, officers had information that Defendant had threatened an individual with a long gun and fled his residence. Officers located the vehicle Defendant had been driving at a different residence, but one he was associated with. As officers were discussing how to proceed, Defendant came out of the residence, with no warning, in the direction of the officers. At that time, the location of the firearm was still unknown to the officers.

As he approached, officers raised their firearms, gave Defendant verbal commands to go to his knees and placed him in handcuffs. The testimony of each of the officers present that evening was consistent and credible as to the safety issues and risk that existed based upon the reports of the firearm being brandished by Defendant and its location still unknown. Indeed, the public safety

concerns are evidenced by the actions the officers all took immediately upon being approached by Defendant.

When Defendant was on his knees, Officer Belay asked him what was going on.  Defendant denied knowing what was going on or why the police were there. They had a brief back and forth about why the police would be at his residence and what he has been up to.  Officer Belay testified credibly that his questioning was aimed at, essentially, mitigating the safety issues that existed with the unknown location of the firearm. Indeed, in less than two minutes of the conversation beginning with Defendant, he is read his *Miranda* warnings. As such, the information Defendant gave from this questioning, while it is not clear that it is even incriminating, nevertheless falls within the public safety exception to the requirement of *Miranda*.

### B.   Defendant's Post-Miranda Statements

When determining whether a Defendant's statements are admissible, a court must consider whether, prior to interrogation and while in custody, Defendant waived his *Miranda* rights voluntarily, knowingly and intelligently. *Miranda v. Arizona,* 384 U.S. 436, 444 (1966).  "[A] waiver is 'voluntary' where the court can determine that the waiver was a product of the suspect's free and deliberate choice, and not the product of intimidation, coercion, or deception." *Thai v. Mapes,* 412 F.3d 970, 977 (8th Cir. 2005). "A waiver is 'knowing and intelligent' where it is made with full awareness of both the nature of the right being abandoned and the consequences of abandoning the right." *Id.* The government "need prove waiver only by a preponderance of the evidence." *Colorado v. Connelly,* 479 U.S. 157, 168 (1986).

 "We consider the totality of the circumstances, including the conduct of the officers and the characteristics of the accused, in determining whether a suspect's waiver or statements were the product of an overborne will." *United States v. Daniels*, 775 F.3d 1001, 1004 (8th Cir. 2014)

(quoting *United States v. Havlik*, 710 F.3d 818, 822 (8th Cir. 2013)). "We consider, among other things, the degree of police coercion, the length of the interrogation, its location, its continuity, and Defendant's maturity, education, physical condition, and mental condition." *Id.* at 1004-1005 (quoting *Sheets v. Butera*, 389 F.3d 772, 779 (8th Cir. 2004)). The Government must prove that the totality of circumstances surrounding the interrogation revealed both an uncoerced choice and the requisite level of comprehension. *Moran v. Burbine*, 475 U.S. 412, 421 (1986).

Defendant suggests he did not voluntarily waive his *Miranda* rights. Dkt. No. 35-1, p. 4. He argues that he was ordered to the ground at gunpoint, handcuffed, placed in a squad car, expressed confusion as to what was happening and interrogated. *Id.*, pp. 4-5. Under the totality of circumstances, Defendant contends his statements were not given with free and rational choice and, therefore, were involuntary. *Id.*

The Government resists Defendant's contentions, maintaining that he waived his *Miranda* rights voluntarily and knowingly. Dkt No. 48, pp. 11-12. Officers did not use physical violence or tactics to overcome Defendant's will and the video establishes the encounter between Defendant and the officers was pleasant. *Id.* Defendant was read his *Miranda* rights, responding affirmatively to understanding them and referenced the fact it was not the first time he had those rights read to him. *Id.*

In this Magistrate Judge's view, it is clear, from the evidence presented, that Defendant knew and understood his *Miranda* rights. As Defendant is read his rights, he responds affirmatively that he understands them and what they mean. The following exchange is captured on Exhibit 5, Officer Belay's body camera video:

> Belay: Listen man, this is uh, this is a strange set of circumstances.
> Defendant: [inaudible]

Belay: And since you're in handcuffs, I want to make sure you know what your rights are.
Defendant: I got you. I got you.
Belay: You have the right to remain silent. Anything you say can and will be used against you in court.
Defendant: Yes.
Belay: You have the right to the presence and advise of an attorney.
Defendant: Yes.
Belay: If you cannot afford one, one will be appointed to you before any questioning. You can choose at any time to exercise these rights and not answer any questions and not make any statements.
Defendant: I got you.
Belay: You understand those rights?
Defendant: I understand my rights—not my first time being read to, you know.
Belay: I just, like I said, you're in handcuffs, so I just want to make sure you know.
Defendant: I'm in handcuffs. I don't understand why I'm in handcuffs, cause…
Belay: I've got a feeling you do.
Defendant: No.
Belay: I've got a feeling you do, it's just a question of whether you're going to tell me or not.

Exhibit 5, 1:46:11-1:46:50.

This exchange demonstrates Defendant clearly understood his rights. Indeed, Defendant even references that he has faced these circumstances previously, stating "I understand my rights. Not my first time being read to, you know." Defendant's criminal history is lengthy, showing numerous contacts over the years with law enforcement, consistent with why he would have made this statement. *See* Dkt. No. 12.   Additionally, Defendant acknowledges several times, during the conversation with the officers, that he also has had contact with law enforcement, without arrest, on multiple occasions related to domestic incidents. Although Defendant expresses some confusion, that only has to do with why law enforcement is present and what is happening in general. In no manner does Defendant ever express any confusion as to his *Miranda* rights.

Regarding the voluntariness of Defendant's statements, this Magistrate Judges finds that Defendant voluntarily waived his *Miranda* rights. The questioning of Defendant lasted less than one

hour, Defendant was standing outside of his mother's residence and then seated in a patrol car parked in front of his mother's residence during the encounter and there was no physical violence or tactics used towards Defendant. Indeed, as Defendant is seated in the patrol car, while some of his comments are in response to being actively questioned by officers about the circumstances, most of the encounter appears to consist of the officers and the Defendant passing time, as they wait to see what transpires from the other officers' investigation.

Further, this Magistrate Judge has thoroughly reviewed each of the videos admitted into evidence. (Exhibits 5, 6 and B). Throughout his conversation with officers as recorded on the videos, Defendant and the officers are calm. Defendant spoke in English,[1] appropriately responded to questions, and initiated conversation, often making small talk with officers, including discussing his recent hunting excursions, that he is recently engaged and what had been prepared for dinner. At no time did Defendant ask for an attorney, or even make mention of an attorney, state that he did not understand his rights, or state that he did not want to talk to officers. Each of the officers testified credibly and consistently that Defendant was not pressured to speak, the interaction was pleasant, and Defendant's statements were voluntary.

There is nothing about the circumstances of this case that suggest Defendant did not know and understand his rights. The Government has shown by a preponderance of evidence that Defendant had a full understanding of his rights and made a deliberate and voluntary choice to relinquish the protections afforded by those rights.

### C.      Search Warrant

"A supporting affidavit establishes probable cause to issue a search warrant if it 'sets forth

---

[1] Defendant, through his attorney, filed a statement with the Court that he does not require an interpreter in this matter. Dkt. No. 16.

sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched.'" *United States v. Mazzulla*, 932 F.3d 1091, 1098 (8th Cir. 2019) (quoting *United States v. Brackett*, 846 F.3d 987, 992 (8th Cir. 2017) (quoting *United States v. Snyder*, 511 F.3d 813, 817 (8th Cir. 2008))). We determine whether or not probable cause supports the issuance of the warrant based upon a "common-sense reading of the entire affidavit." *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quoting *United States v. Sumpter*, 669 F.2d 1215, 1218 (8th Cir. 1982) (quotation and citation omitted)).

The "[i]ssuance of a search warrant must be supported by probable cause," which exists when, "under the totality of the circumstances, there is a fair probability [that] evidence of a crime will be found in a particular place." *United States v. Petruk*, 929 F.3d 952, 959 (8th Cir. 2019) (citing *U.S. v. Faulkner*, 826 F.3d 1139, 1144 (8th Cir. 2016); (*see United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995))). When reviewing the issuance of a warrant, we afford great deference to the issuing judge's probable-cause determination, ensuring only that the judge "had a substantial basis for concluding that a search would uncover evidence of wrongdoing."  *Petruk*, 929 F.3d at 959 (citing *Illinois v. Gates*, 462 U.S. 213, 236 (1983)).

When the judge relies solely on the affidavit presented to him, "only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Gladney*, 48 F.3d 309, 312 (8th Cir. 1995) (citing *United States v. Leichtling,* 684 F.2d 553, 555 (8th Cir. 1982), *cert. denied,* 459 U.S. 1201 (1983)).  Not only may an issuing judge "draw reasonable inferences from the totality of the circumstances in determining whether probable cause exists to issue a warrant, we have also recognized that law enforcement officers may make reasonable inferences in preparing affidavits in support of a warrant." *Brackett*,

846 F.3d at 992 (8th Cir. 2017) (quoting *United States v. Thompson*, 210 F.3d 855, 860 (8th Cir. 2000) (citations omitted)).

The critical element in a reasonable search is not that the owner of the property is suspected of crime but that there is reasonable cause to believe that the specific "things" to be searched for and seized are located on the property to which entry is sought. *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978).

As a general rule, the burden of proof is on Defendant who seeks to suppress evidence. *Carter v. United States*, 729 F.2d 935, 940 (8th Cir. 1984) (citing *United States v. Phillips,* 540 F.2d 319 (8th Cir. 1976) *cert. denied,* 429 U.S. 1000 (1976)).

Here, Defendant argues the application for search warrant and attached documents provide no information from which a judge could find probable cause that a search of the residence at 2637 Indigo Court would yield a firearm or other evidence of a crime. Dkt. No. 35-1, pp. 6-7. In particular, Defendant contends that no gun was found on his person, in his vehicle or at the South Scott Boulevard residence and, as such, there was no reason to believe a gun would be found at the Indigo Court residence. *Id.*

The Government resists, contending the facts of the case, as set forth in the affidavit in support of the application for the search warrant and the reasonable inferences from such facts, provide a sufficient showing of probable cause to believe Defendant had committed a crime and evidence of that crime, particularly the firearm, would be located at the Indigo Court residence. Dkt. No. 48, pp. 17-18. This Magistrate Judge agrees.

In this case, the statement of Officer Harding was submitted in support of the search warrant and avers that officers responded regarding a complaint of a weapons offense and met with the complainant. Ex. 7, p. 3. The complainant advised that her friend had parked their vehicle at the

wrong address of 2637 Indigo Court. *Id.* A short, heavy set Hispanic male, the resident of 2637 Indigo Court, approached the vehicle and asked the complainant's friend to move his car. *Id.* Once the complainant's friend moved his car, this individual came to the car carrying a long gun resembling a shotgun, pointed the firearm at the vehicle, and a verbal altercation took place. *Id.* The complainant yelled that she was calling the police. *Id.* This individual retreated to his residence. *Id.* The complainant called the police and observed the individual get into a red van and leave the area. *Id.* Officers were able to confirm the vehicle was registered to Cheryl Bautista at 2637 Indigo Court. *Id.*

Officers located the vehicle at 2100 Scott Boulevard and contacted Defendant, who was known to officers from a previous contact at 2637 Indigo Court and matched the description provided by the complainant. *Id.* Officers spoke with Jonathan Roldan Lopez who stated he was with Defendant at 2637 Indigo Court and had witnessed him confront a vehicle parked in the driveway, though he denied seeing Defendant with a gun. *Id.* p. 4. A consent search of the vehicle did not locate a gun, nor did a consent search of Roldan Lopez's bedroom at 2100 Scott Boulevard. *Id.* Officers requested consent from Cheryl Bautista to search the Indigo Court residence for the firearm which consent was denied. *Id.* Officer Harding set forth that Defendant has a criminal history of a conviction for domestic abuse assault and that such a conviction prohibits a person from possessing a firearm. *Id.* Based on this, Officer Harding indicated his belief that a search of the Indigo Court residence will result in the discovery of a firearm which is a violation of this law. *Id.*

This Magistrate Judges finds more than sufficient probable cause within the four corners of the search warrant application. As set forth therein, a report was received of an individual matching Defendant's description, who resided at the Indigo Court residence and was known to officers, brandishing a firearm.  The statement indicates that, after the confrontation, the individual retreated

to his residence and then left the scene. When he was located at a different location, Defendant did not have any weapon, none was found in his vehicle, nor was a firearm found at the residence at the different location.

Given this chain of events, it is not just reasonable, but quite logical that if there was a weapon brandished, it would be located at the Indigo Court residence. Officer Harding's written statement notes that, after the confrontation and prior to leaving in the vehicle, the individual "retreated to his residence." It is quite reasonable to conclude, given that no weapon was found elsewhere, the individual likely placed it in or at the residence at Indigo Court. Defendant's contention that the statement does not indicate that Defendant retreated "into" the residence is of no import.

Based upon the facts, taken together with reasonable inferences, there is more than sufficient probable cause to believe Defendant had committed a crime and that evidence of that crime, particularly the firearm, would be located at the residence at 2637 Indigo Court.

### D.  *Leon* **Good Faith Exception**

Although this Magistrate Judge finds there was probable cause for the issuance of the search warrant in this case, Defendant's argument concerning the good faith exception will be addressed herein for purposes of making a report and recommendation of all issued raised by the parties.

The United States Supreme Court has created a good faith exception to the exclusionary rule. *United States v. Leon*, 468 U.S. 897 (1984). "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *United States v. Ortiz-Cervantes*, 868 F.3d 695, 702 (8th Cir. 2017) (quoting *United States v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007)).

*Leon* identified four situations in which an officer's reliance on a warrant would be unreasonable: (1) when the affidavit or testimony supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for its truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when the affidavit in support of the warrant is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable "; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Leon* at 923.

"In assessing whether the officer relied in good faith on the validity of a warrant, we consider the totality of the circumstances, including any information known to the officer but not included in the affidavit...." *United States v. Johnson*, 848 F.3d 872, 879 (8th Cir. 2017) (quoting *United States v. Grant*, 490 F.3d 627, 632 (8th Cir. 2007)). The test for whether the good faith exception applies is "whether a reasonably well trained officer would have known that a search was illegal despite the magistrate's authorization." *Leon* at 922, n. 23.

 "It is the magistrate, and not the affiant, that is responsible for" determining whether probable cause exists. *United States v. Johnson*, 848 F.3d 872, 879 (8th Cir. 2017) (citing *United States v. Summage*, 481 F.3d 1075, 1077-78 (8th Cir. 2007)). Normally, a warrant issued by a magistrate suffices to establish that a law enforcement officer has acted in good faith in conducting the search. *Leon* at 922. An exception to this general rule exists, however, where the warrant was based on an affidavit "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* at 923.

Although a reviewing court may not look to facts outside of the affidavit to determine probable cause, if the affidavit was deficient, the district court "'must look to the totality of the circumstances,' including any information known to the officers executing the warrant but not

presented to the issuing judge." *United States v. Marion*, 238 F.3d 965, 969 (8th Cir. 2001) (quoting *United States. v. Simpkins*, 914 F.2d 1054, 1057 (8th Cir. 1990)). As noted in *Anderson v Creighton*, the determination whether it was objectively legally reasonable to conclude that a given search was supported by probable cause or exigent circumstances will often require examination of the information possessed by the searching officials. 483 U.S. 635, 641 (1987) (*see also United States v. Martin*, 833 F.2d 752, 755-56 (8th Cir. 1987)).

The Supreme Court observed that suppression of evidence has always been our last resort, not our first impulse, because the exclusionary rule generates substantial social costs, which sometimes include setting the guilty free and the dangerous at large. *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (internal citations and quotations omitted). The Court observed that it has "therefore been cautious against expanding [the exclusionary rule]," and has "repeatedly emphasized that the rules' costly objectives present a high obstacle for those urging [its] application." *Id.* The Court emphasized that it has rejected indiscriminate application of the rule and has held it to be applicable only where its remedial objectives are thought "most efficaciously served" - that is, where its deterrence benefits outweigh its substantial social costs. *Id.* (internal citations and quotations omitted).

In discussing the deterrence benefit of exclusion, the Court noted that the "penalties visited upon the Government, and in turn upon the public, because its officers have violated the law must bear some relation to the purposes which the law is to serve." *Id.* at 593 (quoting *United States v. Ceccolini*, 435 U.S. 268, 279 (1978)). In cases where courts cannot agree on whether the affidavit is sufficient, it is unfair to characterize the conduct of the executing officers as bad faith, particularly where there has been no materially false statements or misrepresentations in the affidavit and where the officer is acting in good faith. *United States v. Martin*, 833 F.2d 752, 755 (8th Cir. 1987).

Here, Defendant argues, given the lack of probable cause that any evidence would be located at the Indigo Court residence, no officer executing this warrant could have objectively and reasonably believed that probable cause existed to search that residence. Dkt. No. 35-1, p. 8. In addition, at oral argument on the motion, Defendant contended that statements made by Office Neeld to the complainant and witness that if they did not cooperate, he would not have probable cause, demonstrates a lack of good faith. Although Officer Neeld was not the officer who sought the search warrant, he was in communication with the officer who did and Defendant maintains this information and/or state of mind should be attributed to him, as well. Therefore, Defendant insists the evidence seized from the residence is not admissible under *Leon's* good faith exception.

The Government argues there is no allegation that the information contained in the affidavit in support of the search warrant was false, or misleading, or that there were material omissions of fact that would alter the issuing magistrate's analysis. Dkt. No. 48, p. 20. Further, the issuing magistrate was experienced and concluded that the affidavit stated probable cause. *Id.* For this reason, the officers would not have known the warrant was invalid and the reliance on the issuing magistrate's determination was objectively reasonable. *Id.*

This Magistrate Judge agrees with the Government's contentions as to the application the *Leon* good faith exception. Officer Neeld's statements to the witness that there would be no probable cause do not demonstrate a lack of good faith. Officer Neeld testified credibly that he made these statements in the course of his investigation because the witness was not particularly cooperative and was expressing reluctance to divulge information. Officer Neeld made these statements to the witness to get him to provide additional information to strengthen the case. Significantly, Officer Neeld maintained that, through his investigation, he believed he already had probable cause for at least one charge and was convinced Defendant was the person to be charged.  The statements he

made appear to be an attempt to broaden the possible charges in this case, not an effort to establish probable cause in the first place. This Magistrate Judge found his testimony as to these matters credible and reliable. Indeed, Officer Neeld was up front about his purpose in making these statements and did not deny or attempt to minimize them.

Accordingly, to the extent the issue is reached, this Magistrate Judge recommends a finding that the officers relied upon the search warrant in good faith and the *Leon* good faith exception would apply.

## RECOMMENDATION AND ORDER

IT IS RESPECTFULLY RECOMMENDED, that Defendant's Motion to Suppress (Dkt. No. 35) be denied.

IT IS ORDERED that, the parties shall have until October 15, 2019 to file written objections to the Report and Recommendation, pursuant to 20 U.S.C. § 636(b)(1), Fed. R. Crim. P. 59(b)(2), and L.Cr.R. 59.

**IT IS SO ORDERED.**

**DATED** this 1st day of October 2019.

_____
STEPHEN B. JACKSON, JR.
UNITED STATES MAGISTRATE JUDGE